Hear ye, hear ye. This Honorable Appellate Court for the 2nd District is now open. The Honorable Justice Susan F. Hutchinson presiding, along with Justice Anne B. Jorgensen and Justice Mary S. Shostak. The case is number 2-19-11-40. Embassy University et al. plaintiffs' appellants v. The Institute in Basic Life Principles, Inc. Defendant Appellee. Arguing for the appellants, Joseph P. Seltzke. Arguing for the appellees, Robert L. Dowidiak. All right. Good morning, counsel. And we do apologize that we're late. That is one problem with arguments of this nature. It just requires more time, generally. But more importantly, we had a rather lengthy argument and many, many questions. So thank you for your patience. And we will now begin. And if I mispronounce names, I do apologize. But Mr. Seltzke? Seltzke, Your Honor. Okay. You may proceed. Thank you. Good morning, Justices of the Court. If it may please the Court, Joseph Seltzke on behalf of all the plaintiffs. To begin the argument, I will address the appellee's arguments in turn. However, I think there are four overriding issues which require reversal of the circuit court and on a motion to dismiss as presented by IBLP to the circuit court. First, as to the motion for lack of standing and lack of capacity to sue, the IBLP, the appellee, did not present relevant evidence conclusively refuting standing and capacity to sue. They did not submit an affidavit showing that the defendants, or excuse me, the plaintiffs did not exist. They did not present any evidence that the plaintiffs were not voluntary unincorporated associations. And because a 2619 motion for lack of standing and capacity to sue places the burden on the defendant completely, that reason alone requires reversal of the circuit court for any dismissal for lack of standing or capacity to sue. Second, in their arguments to the circuit court and in their arguments to this court, IBLP constantly conflates foundational objections as to the admissibility of evidentiary facts which they did not preserve with a contention that the allegations in the complaint and the allegations in our affidavit were conclusory. Evidentiary facts are facts which are admissible in evidence and especially facts which can be directly perceived. A party has to lay a proper foundation for those evidentiary facts. But if the opposing party does not object on the basis of lack of foundation, those foundational objections are waived and the evidence can be given its regular way. And in a complaint, there's no need to plead foundational facts. Evidentiary facts are fine and actually all that is required are ultimate facts. Conclusions, on the other hand, are factual inferences or questions of ultimate fact which require a logical step to reach the question, to reach the factual determination, applications of law to fact, and pure propositions of law. In this case, the affidavit contained evidentiary facts to support the ultimate facts and allow for an inference to draw the appropriate conclusions that we have a cause of action against IBLP. Third, because IBLP did not submit an affidavit conclusively refuting that the plaintiffs are not voluntary associations or not out-of-state, not-for-profit corporations, we did not have to produce anything because the burden of proof is on them. So even if the plaintiff's complaint was entirely based on conclusions and the affidavit submitted to the court was entirely conclusory, which it was not, that still would not be a basis to dismiss the complaint with prejudice. The only basis to dismiss the complaint would be based upon Section 2615. And because causes of action exist in this type of case, the circuit court would have been justified only in striking the complaint and acquiring amendments. Instead, the circuit court dismissed the complaint with prejudice and this is reversible error. Finally, IBLP did not present this argument to the circuit court, but did present it to this court, claiming that the dispute is not justiciable as it is a dispute among religious organizations or among religious believers within an organization. And that is untrue under Illinois law because this dispute can be decided through legal principles, which we pleaded, including association principles, including implied trust principles, including contractual principles, promissory estoppel, and unjust enrichment. And second, because on this record, William Gothard is the head of the organization, the ecclesiastical and theological head of this religious organization, and therefore the court had authority to direct the property and the use of the property as William Gothard directed, and therefore under this record, the dispute is justiciable. Second, moving forward, we pleaded causes of action. The motion to dismiss for standing and lack of capacity to sue was not supported by appropriate evidence and therefore it had to be denied. We set out evidence in our affidavit that showed that these plaintiffs were out-of-state corporations or voluntary unincorporated associations. There is no need for these types of associations to be registered in Illinois, and therefore for religious associations to be registered in Illinois, and therefore that is not a basis for dismissal. And even if the organizations had to have been registered in Illinois under appellate precedent, the remedy is to stay the litigation until those entities are registered, rather than dismiss the complaint with prejudice. Second, moving to their 2615 motion, we, contrary to their arguments, we pleaded the existence of an association. They argue that there's no written association agreement, and the circuit court seemed to accept that argument. However, that's not true under Illinois law and under both Supreme Court precedent and statutory law. The Civil Practice Act does not require a written agreement, and under the Supreme Court precedent in Chicago Trimmers Association v. Murphy, there is no need for a written agreement, or even an oral agreement, which we do have some oral agreements here, but conduct alone is all that is necessary to establish an association. It is a group of people or entities working together for a common purpose by mutual consent, and all of that can be inferred through conduct, and if that is the situation, then an implied agreement is in place. Once the association relationship is established, it creates contractual and fiduciary duties among the various entities, and at that point, these are enforceable obligations. We also pleaded an implied trust, which the appellate court and the Supreme Court specifically recognize as a cause of action, and in that case, that would create fiduciary duties as well. And even if there were not a contractual agreement, there is also promissory estoppel, which we pleaded, as well as unjust enrichment, which do not require contractual privity among the parties. And I have 30 seconds left, which I guess the only other issue would be that the plaintiffs were denied leave to amend, and because this is the first attempt to amend, and the case was not very old, it is reversible error not to give leave to amend. And at this point, I guess I would take questions. All right, thank you, counsel. Justice Shostak, do you have any questions? Yeah, I do. One of the issues that was raised was the ecclesiastical abstention. Do you believe that argument has any merit here? I do not believe so, no. Then why? Because the notion of a contractual agreement, which is a case of mutual obligation, which applies to all associations, would apply to this association. Similarly, unjust enrichment and promissory estoppel apply to all types of entities, and therefore that neutral legal principle can be attributed to a religious association. And there are given, especially that there are no doctrinal disputes here. On this record, and IBLP did not challenge this point in the circuit court or otherwise, there's no doctrinal dispute here. This is not a dispute as to whether communion creates transubstantiation or consubstantiation. Everyone is singing from the same hymnal. IBLP is using the same books and doctrine as William Gothard. This is strictly a property dispute as to how this property is to be used when it was promised to be used for these various ministries, and it's not being used for these various ministries. And the property is not being maintained as it was promised to be maintained. So there's the issue of neutral legal principles. There's also the issue of William Gothard as the founder of this organization and the person who wrote all of the doctrine for this organization, all of the religious doctrine, who created the theological understanding for this organization, is the person who can determine what the original purpose of the organization is. To use an example from the Bible, if Moses was the head of the Israelite church leaving Egypt and then he left that formal position to go to Sinai to get the Ten Commandments, when he came back, he would be able to say, no, the original purpose of our religion was not to worship a golden calf. The original purpose of the religion is to worship the one God of the Israelites. And as the founder of the religion and the determinant of all the doctrine of this religious organization, William Gothard has the ability to opine as to what entity is carrying out the original purpose of the organization and whether the property of this organization is being properly used. So those are the two reasons. And I would point out that in this case, the deference to the theological head of the organization and neutral legal principles doctrine, where those two doctrines combine in this case, because William Gothard is uniquely able to make a determination as the founder of this organization as to whether the IBLP is using property according to the original purpose of this organization. Was Mr. Gothard allowed back into the organization after the alleged sexual misconduct? Is he still a part of the organization and does that matter if he is or he isn't? Dr. Gothard is not part of IBLP, the not for profit corporation. However, Dr. Gothard is a member of the broader followers and a guide for the various ministries, which are carrying out his work. And we argue that IBLP, the not for profit corporation, is simply a holding company for the assets of the broader denomination, the IBLP association. And so the fact that he is no longer associated with IBLP, the not for profit corporation, does not mean that he is not still the head of the broader IBLP association. And in Kelly versus Riverside Boulevard Church, there was a similar argument made. And in that case, the appellate court specifically held an unincorporated religious body can sue the company, the incorporated company, which holds church property, if that unincorporated religious body contains the ecclesiastical and theological head of the organization. And this is a similar situation to that. Do you think that Embassy is the correct plaintiff in this case? The name Embassy University? I believe it is a misnomer. It should have said Life Purpose Polyteens Inc. doing business as Embassy University. So I do believe that Embassy University is the correct plaintiff. However, it was misnamed in the complaint. There was a misnomer. And I believe that that should be corrected on an amended complaint. And it's not a basis to dismiss the complaint. All right, thank you. You talked about trust. You said that there was an implied trust, constructive trust, and then you talked about a resulting trust. If they have a resulting trust, you have to have an express trust, don't you? Not necessarily. I believe what you do need is a party donating money or donating property to another and have the property title in the other, the trustee's name in order to, and that creates an equitable or resulting trust. I believe that is one basis of a resulting trust. In this particular case, the complaint alleges that the property was donated in 58, but IBLP wasn't incorporated until 61. Correct? Yes, yes. And it was donated. That's why we think it was donated to the association more generally. And then later it was placed into the holding company IBLP. And you feel this was a resulting trust? It was in an equitable trust. The exact kind of implied trust which is allowed under Kelly versus Independent Boulevard Church and Ferraria versus Bescanelos, the courts have never exactly said what kind of trust it is, but I think it has aspects of a constructive trust, a resulting trust, or just a more general implied trust. And there is a point in a case where the courts say, look, the chancellor makes this determination on equity. So what kind of equitable trust it is, I think it has aspects of all three. And any one of them would be sufficient to state a cause of action. And your opponent puts great weight on this, that there was never an offer or an acceptance, therefore there was never a contract in this case. You are indicating you could go other ways other than a contract. What is your position with respect to this position that there was no offer or acceptance? Certainly for an implied trust, there is no need for an offer or acceptance. There is no need for an offer or acceptance. In fact, in none of these does there have to be a formal offer and acceptance for these entities to exist. So an association can be implied through conduct. And because of that, at that point when it is implied through conduct, then the association relationship is governed by contractual principles as well as the equivalent of partnership principles such as fiduciary duties. Thank you, sir. I have no further questions. Thank you, Justice Shostak. Justice Jorgensen, do you have any questions? Yeah, I'll pick up right with the next point on that, whether or not there is a viable contract. The defendant raises a lot of arguments, as Justice Shostak said, that there was no offer and acceptance. They also talk about no consideration. Where's the consideration for this agreement? A change in legal relationship is sufficient consideration. So therefore, just as by entering into a joint venture, each party changes their legal relationship and that is sufficient consideration to support such a contract. And similarly, when you enter into an association, you change your legal relationship and that is sufficient consideration to support an implied contract. And therefore, the consideration comes from the change in the relationship with one party agreeing to hold, for instance, IVLP agreeing to hold the property for the benefit of all the other ministries and each of the ministries agreeing to take actions to spread Dr. Gothard's understanding of the Bible and understanding of biblical concepts to everyday life. That is, the agreement to do those actions constitutes consideration, as well as the change of legal relationship, the entry into the association. What is the relationship between these parties? The various plaintiffs. So the defendant is a holding company for the various ministries and it holds the property and the cash for these various ministries and then supports these ministries through financial support and use of the property and then the ministries, the individuals in the various ministries, then teach the seminars and teach Dr. Gothard's understanding of how biblical principles affect everyday life and how belief in these biblical principles can lead to a Christian lifestyle. So the relationship. Sorry, go ahead. Okay, here's my point, though. If the defendant is just a holding company, does it have any religious overtones at all, or is it simply a box into which property was deposited as a corporation? I do not believe that and we contend that the IVLP board of directors are not religious authorities of the IVLP association. They are simply custodians of property. And the IVLP has an obligation under its bylaws to support the various ministries and educational entities. And that would be the only true religious overtones associated with IVLP proper. It holds this property for the benefit of these various ministries. So, you know, and listen to your argument and then your response to some of these questions. The thrust of your complaint is that all of these entities entered into an agreement, whether that agreement was, well, it wasn't written, but whether it was verbal or by conduct, and it is that that agreement that gives rise to all of the other relationships. That's basically the thrust of your argument? Yeah, I think that is. That is the thrust of the argument. If we were to find that there was no agreement, then your complaint fails. I believe that would have to be a question of fact. So the trier of fact would have to find. I appreciate this is on a motion to dismiss, but if we were to find that you had not sufficiently alleged that agreement, then the circuit court would have been granted, leaving aside the question of whether you should have had an opportunity to recede. But would that be correct? If the agreement was improper, if there were not enough facts to allege an agreement, then the circuit court would have been justified in striking the complaint. If I could just add on one point here. Chicago Brain Trimmers Association versus Murphy seems to have a less stringent standard than a pure agreement to create an association. So some of the counts for an association would maybe survive even without an agreement under Chicago Brain Trimmers Association versus Murphy. And as well, the promissory estoppel and unjust enrichment claims are not necessarily dependent upon an agreement, but upon the conduct of IBLP to these various ministries. And I would argue the implied trust very well could be established through the conduct of IBLP. I understand that. And I gathered that was your argument. But my point is, if we find that you have not sufficiently alleged that conduct, then your complaint fails. If I have not alleged the conduct sufficiently, then yes, the complaint would fail. Great. Then let me ask this. What is the minimum threshold for allegations of fact that would create an association? What's the minimum threshold? Well, I think there would have to be facts which show that the people or entities are working together for a common purpose by mutual consent. So there would have to be facts of people or entities working together, which I think we alleged, for a common purpose, which we alleged was the teaching of the ministry of William Dockler by mutual consent, which we also alleged, I believe, sufficiently through the corporate resolutions by IBLP, as well as the people working together using these seminars and using the same doctrine as Dr. Dockler. So the common purpose is a pretty large umbrella here because you said that the defendant here is merely a holding company to facilitate the use of the properties, finances, and the use of actually the building property for conducting seminars, etc. But it is the plaintiffs that actually did the ministry. Yes. Yes, that's true. So your common purpose is not only the plaintiffs actually doing the ministry, but the defendant who creates, I guess, the structure to allow that to go forward. That's all part of the common... Yes, and finances the structure to allow it all to go forward. Okay. All right. I have no other questions. Thank you very much. All right. Counsel, I have a few questions. One relates to an answer you gave to Justice Jorgensen about ILBJ and its status. Are contributions to ILBJ either charitable or religious donations subject to favorable tax considerations? Probably, yes. Okay. So it does have religious or charitable, but religious would be our more significant issue in this case, overtones. Yes. IBLP exists to finance the religious purposes of the various ministries. IBLP. I'm sorry. I misnamed short the entity. It's very long wording. Okay. We've already agreed that usually the existence of an entity is a question of fact, and it is generally left for the trier of fact. Is 2615 a proper place to determine this at all before any discovery or anything of that nature has been accomplished? Well, out of 2615, no. I think that as to the existence of the entity, I have no obligation, the plaintiffs have no obligation to plead facts establishing standing or capacity to sue. All of that is within the purview of the defendant in presenting their affirmative defenses. And since that wasn't the case here, I would say it is improper on a 2615 motion to determine that. And how is a court supposed to review pleadings, specifically under a 2615 motion? Are they to be liberally construed, closely construed, or are we to take the allegations as alleged as true? The facts in the complaint are to be taken as true. All inferences which could be drawn from those facts have to be drawn in favor of the plaintiff. And dismissal with prejudice is only proper if there is no set of facts for which a plaintiff could prove his or her case. And therefore, if the complaint is missing some facts, then the remedy for the trial court is to strike the pleading and require amendment. Pleadings are to be liberally construed to do justice between the parties. And a case I cite in my brief in Savka v. Smith says that as long as the defendant understands the allegations against it, that is a sufficient pleading under Illinois law and the issues of standing or capacity to sue or the existence of the parties are questions that could be determined later on on summary judgment or at trial. How long had the case been pending when these motions were brought and decided? Let me check. It looks like the complaint was filed on August 16, 2019, and the dismissal with prejudice occurred on in December of 19, I believe. I'll take a look and find a way. I can check that too, but I was just I wanted to verify that fact. So between the filing date and this dismissal date, had there been, you know, significant court dates or, you know, what was What was going on? Well, there was just a briefing schedule entered on the motion to dismiss. Okay. And then there was oral argument on a motion to dismiss the first complaint and And that was that the circuit court then dismissed the complaint with prejudice at that point in time. And I'm looking at the order, Your Honor, it is December 11, 2019 That the complaint was dismissed with prejudice. All right. Thank you. Well, my question may be a bit premature here, but What, what is the actual goal of this particular litigation as it's pled? The goal For the litigation. Is to Obtain the property being held by IBLP and the finances being held by IBLP and require it to be placed in a either some type of equitable trust to support the various ministries properly or to obtain a damages award. Against IBLP for the property and financing that was supposed to have occurred with one small exception. The one exception is the complaint for the reinstatement of William Gothard and that would only be Proper if the trial court took evidence and determined that William Gothard is the theological head of the organization, the IBLP association and therefore would have authority to Have some management authority over IBLP Proper so just as, for instance, the Bishop of a Catholic, the Archbishop or the Cardinal of the Catholic Church can replace a priest in a given parish. So we would argue for this one small exception for the reinstatement of William Gothard, he would have the ability to as the ecclesiastical head of the organization to To direct the management of IBLP the holding company. So those are the two issues. And is that the reason at this point that he is not one of the plaintiffs, because that's not consistent with some of the other Goals of the litigation. Well, he's not one of the plaintiffs, because the ministries have the right To direct as association members have the right to this property. So as he is not a part of this litigation, because he individually doesn't have the right to do so. The ministries have the right to appoint the director of IBLP, a director of IBLP But doesn't he have a personal stake in terms of money in embassy. And the I take that back. No, Life Purpose Power Teams has the stake in money because Life Purpose Power Teams, the corporation, the entity who has been providing the financial support for Embassy University when IBLP So if you had a chance to possibly go back to the trial court and do some repleting you would probably be changing the one of the the plaintiffs, I assume, and then would you be in a position to add Dr. Gothard. I would be in a position to add Dr. Gothard, but I don't know if he necessarily, I guess I could add Dr. Gothard. Yes. Okay. All right. Thank you very much for your answers. You will have an opportunity to respond after counsel goes forward. If you so choose. Thank you, Your Honor. Now, counsel, I'm going to do the same thing with you. Can you say your name for me because I'm struggling with how to pronounce it. Yes, Judge. My name is Robert Dowidiak. Thank you. And, sir, Mr. Dowidiak, you may proceed. Thank you. Good morning, and may it please the court. My name is Robert Dowidiak. I represent the Institute in Basic Life Principles. It's referred to as IBLP in the briefing. I think first, what I'd like to start with is this argument that counsel made in his papers and again now that he should have been given an opportunity to replete. He says it's reversible error that Judge Fullerton did not allow him the chance to replete. But that's actually not what Judge Fullerton ruled. Judge Fullerton very clearly ruled that the counsel had a right to file an amended pleading naming different plaintiffs. That was the ruling. The reason why he ruled that way is the complaint. Well, it was clear that there was only really two entities that were at issue on the plaintiff side of the V. One was Embassy University. There are a couple accounts that are on point saying that Embassy University was, you know, they believed was supposed to be financially and spiritually and morally supported by IBLP and that wasn't happening. So, Embassy University was claiming they were a member of this claims association and that they were wronged and injured and there were attempts made to spell out who they were and why they had a cause of action. With regard to Embassy, we filed a motion to dismiss and used public filings, public records that the court took judicial notice of, which were also conceded by opposing counsel, that Embassy University was pled as an Illinois not-for-profit corporation, but in fact, it was dissolved in 2014. It didn't exist. And so counsel agreed in his papers, and this came up during the oral argument, in fact, it just came up again now, that, yeah, the real entity isn't a duly formed entity called life purpose. Judge Fullerton asked him during the oral argument, where's life purpose in this? And counsel said, well, you know, I could interplead them in or, you know, misnomer, I don't, you know, and so at the conclusion of the argument, Judge Fullerton said, you can replead and name another plaintiff. The other potential plaintiff that this could have been brought in, I suppose, although I argued as stridently as I could that the whole case should be thrown out because these were not causes of action, but Judge Fullerton clearly said in the argument, you know, you know, DeWittiac says that there is no association. You claim that there is. If you want to replead and be careful with your facts and specifically plead this, I'll give you a right to replead. It's because the association, the claim the association was not a plaintiff in the case, and during the argument, Judge Fullerton, and I'm looking at the transcript, is asking him, you know, multiple times, for example, on page 12 of the transcript, okay, so you're asking for relief on behalf of the IBLP association. The answer, yes. So Mr. Selfka alleged that there was an association and the claims were on behalf of the association, but they were not a plaintiff to the case. These other claim plaintiffs, there was nothing said about them. There's nothing said about them in the complaint, why they're harmed, who they are. In my church, at best, I think you'd call these missionaries, maybe. There was an affidavit that said, well, they could be, or they are believers, volunteers. I don't know, people in other countries who Mr. Gothard claimed, I guess were missionaries, but the actual people who could have claimed a harm was his embassy and the association. Judge Fullerton was clear on that, although I disagreed with the decision, but that they could replead and name the new plaintiffs. About a week later, and I didn't know this until I read the transcript, apparently counsel or someone from his law firm went into court and asked Judge Fullerton to change the order so that it also applied to the dismissal with prejudice as to life purpose. But Judge Fullerton correctly wouldn't do that. He said life purpose is not a plaintiff, was not a plaintiff, the order does not apply to them. And so you got the final order of the case, which is the plaintiff, counsel, saying there are no new plaintiffs. And that was his decision, and that's why there's the final decision of why we're up on appeal. So Judge Fullerton absolutely said they could replead and name life purpose, Mr. Gothard, I reckon, if he has a cause of action, or the association, and he gave them that right, and they chose not to, and they entered a final order that counsel said there are no other plaintiffs. So that's respectfully not a criticism of Judge Fullerton that's on plaintiff and appellant. So that's what happened with the replating, and that's why that argument, I think, fails. But also, and I'll be very brief because I have short time, but I argued as strenuously as I could in the lower court that these were not causes of action for several reasons. Number one, all of the claims, all of the claims depend upon a finding that there is this association. The implied contract is based upon an association agreement. The fiduciary duty is a claim that members of an association owe each other fiduciary duty. They're all dependent on a finding of an association, and I've been studying up on this since this case and doing this appeal. There is no case anywhere ever, and they cite cases even from Maryland where anybody is, a claim is asserted against anyone who says I'm not part of your association. I don't have mutual assent. I don't agree. I'm not part of any unified position of different entities. I'm not in. And a court is saying, too bad. All of your assets, your real property, all have to be placed in trust. The requisite element, and counsel just said it again, the requisite element for an association to exist in each of their cases is, I'm looking for it, the mutual consent and that they act together. Here, Judge Fuller can ask me in the records, is there an association, Mr. Dweck? I said no, and the reason I can say that with such confidence is because they pled that at least beginning in 2014, IBLP does not agree to any of this. IBLP is run by a board of directors, and they absolutely do not agree to further the teachings of Bill Gothard. IBLP does not agree to sell Bill Gothard's books as they're alleging we have to do. IBLP does not agree to bring back Bill Gothard to run IBLP. IBLP does not agree to any of that. And so they're alleging it's an association, the requisite element is mutual agreement and agreement to act in common purpose, and then they plead that IBLP does not agree. In my mind, that's akin to saying I'm suing you for an oral contract, and here's my pleading. Number one, there's no meeting of the minds, and there's no consideration, but then you somehow conclude, yeah, there's an oral contract. Well, you pled that elements necessary for your claim don't exist, and here they pled that there's no agreement. There's no case law where anyone is pulled in and held to an association where they're saying I'm not part of it. There's no case law, nothing they cite that says, well, even if this association ever existed, that it's in perpetuity and one could never get out? Is that what they're claiming the law is? None of their cases support any of that. Further, I guess just to quickly touch on this point, by the way, IBLP is a ministry. It's a standalone ministry. Even in their pleading, it's been in existence since the 60s. The other purported ministry, Embassy, was founded decades and decades later. It's not correct based on their own pleading to say IBLP is a holding company. IBLP is a standalone ministry. Also, this falls squarely into the ecclesiastical extension doctrine. What they're claiming, what IBLP claims, it's a ministry. It's a religious organization. It's very conservative. They're furthering the teachings of Jesus Christ. The book is the Bible. Mr. Gothard didn't write it. God did. That's what they're furthering. What the claim is, or the claims, the 11 claims, is tell IBLP and their board of directors what ministries they should support financially and spiritually. They're looking for a court order that a court should tell IBLP how to support ministries spiritually and morally and whether they can ever stop supporting missions. There is no claim, there's no case, none of their association cases, not one that I've seen anywhere would support such a claim. Also, it falls squarely in the ecclesiastical extension doctrine because all of their claims are seeking religious decisions. Finally, I guess just to highlight what is actually going on here, and this is in the papers, it's unfortunate. It's actually quite sad. It's an example of a religious leader who led the church, the ministry, for decades. He left. It's unfortunate. He voluntarily resigned amidst bad allegations. He wants back in. The IBLP board does not want him back in. It's no different than other examples that we see in the papers. There's a church in South Barrington, Willow Creek. Some people said that that pastor did some bad things. He says he didn't. In Rolling Meadows, Harvest Bible, some people say he's doing some bad things. He says, I absolutely didn't. This has never been done before, but this is an attempt at a cause of action to say, yeah, I'm out. I'm the pastor who's out. But because when I was in, I sort of ran things as, I'll call it an association. So therefore, get me back in control. Make them sell my books. They have to support my ministry. I get control over the real property. Take the deed of the church and put it into an association. All the assets. This is, my opinion, respectfully, dangerous ground because this has never been done, but that is what is happening or what is attempting to happen. Here is the ousted pastor trying to gain control of the ministry that the board says, I'm sorry, we want nothing to do with you after those allegations and after, by the way, you voluntarily resigned. So with that, I'll answer any questions that you have for me. All right. Justice Shostak, do you have any questions? The whole case was based on a pleading allegation that there was an association and they pled that there was no mutual agreement, that IBLP did not agree to be in the association. So not only was it a conclusion, but it was contradicted by their own pleading. You raise in your briefs here that there was no jurisdiction, that lower court had no jurisdiction, that there were limitations on that court below. But you never raised that below, did you? I absolutely did. In the transcript, it's exactly what I was arguing. I'm arguing the ecclesiastical abstention doctrine because it's the focus of my argument. What I said to judge, yeah, I argued that the IBLP makes its decisions as a board of director, that the deed is in the name of IBLP, that IBLP is a standalone ministry and their board of directors does not want Bill Gothard back in, does not want to sell his books, does not want to support his ministry. The IBLP should be able to make those decisions free from the court, that a court should never direct a ministry or a church to do those things. That's barred by the doctrine. Although, admittedly, I didn't use the name. I didn't use the doctrine. But that was the focus of my argument. All right. William Gothard was the head of the organization, so he gave all the property and he directed the use of the property when he was in there before, correct? No, that's incorrect. IBLP is a standalone ministry. I went through some name changes, but it was originally organized. According to the complaint, Mr. Gothard was putting this together in the late 50s and the 60s. Right. But the property came from donors and the ministry, IBLP ministry, is a standalone ministry. It has seminars, it generates income through donations. If you're familiar with a church, it's no different than that concept of Harvest Bible Rolling Meadows is the believers, the people who come, the donations, and this example is James McDonald being forced out or being forced to step down. The certain property that was donated in the late 50s and IBLP itself was not incorporated until 61, correct? It's wrong for a lot of reasons, respectfully, I would say. But the association, the other plaintiff wasn't around for 40 years. How can they be part of an association when the property is given or when IBLP is formed in the early 60s? And of course, none of this is written down. There's not a piece of paper that was admitted in argument. Does it need to be? Does it need to be a written contract or an oral agreement? Well, in the loosest interpretation of some of the cases that counsel cited, an association does not need a written agreement. Okay. I have no further questions. Thank you. Thank you, Justice Shostak. Justice Jorgensen, do you have any questions? Just a quick question. You suggested that what's missing from the plaintiff's factual allegations is this concept that there was mutual consent to the common purpose. So is it your position that there was never mutual consent? Well, it's my position that this is a very transparent attempt by a pastor, by a ministry leader who's out amidst very serious allegations to come back in. And so what the complaint alleges is that in the mind of Mr. Gothard, while he was at the top of the organization, that in his mind he alleges it was for some common purpose, but that was all before he left in 2014. He goes on to allege that in 2014, after he left, that IBLP refused to support embassy. That's what the complaint alleges. And they allege all over the place that IBLP refuses to further his teachings, that IBLP refuses to sell his books, that IBLP refuses to I get that. But my question is, was there ever mutual consent? No, no, there is not. Going back to 1958 or 1961, there was never an agreement here for a common purpose. Oh, I'm sorry. I understood the question that would be, what I would say during the relevant time after Mr. Gothard leaves in 2014, they allege that there isn't. Before that, before 2014? Please, the question is, was there ever mutual consent? Ever. Yes or no? Before 2014, that I wouldn't know. I mean, I know that there's no mutual consent when IBLP is formed or when the property is donated because the other entities don't exist at the time. So there's no association if it's only IBLP at that time for the first 30 years or 35 years. So that's your position. Never ever was there an agreement among all these parties. There certainly is no written agreement. No, the question is, was there any agreement? Not whether it was written, oral, or conduct. Was there any agreement? Prior to 2014, oral agreement, that I don't know. Okay. I have nothing else. Thanks. Next question. Well, what happened was in 2014, there was a website that started by a bunch of women who claimed for decades that they were being sexually assaulted. I know that, but what does IB, I'm sorry, I keep saying it wrong, but what does your client do or say to the rest of these mission that have the same initials in different countries of the world? What did they say that said, we don't know you anymore? Well, okay. So to answer your question directly, there was a statement made on the website because this was all very big news and very well publicized that the connection with Dr. Gothard is severed and he's even admitted to some wrongdoing and so Dr. Gothard is no longer part of the ministry. That was done in 2014 when he resigned and then shortly after was the massive lawsuits filed in 2015. Well, how then did your client become a standalone ministry? Did it file documents with the state? Did it do something to say, we are now, we are this entity, but we are standalone and we have our own teachings? Yes. Well, that was always the case. What I'm saying is that this, what counsel is saying is it's a holding company and that they were always in association. That's something I'm telling you is not accurate. IVLP has always been a standalone entity. IVLP holds the deed to the real estate. IVLP has its corporate charters. This was part of the lower court record because it was attached to the motions showing that they were always a standalone entity and there's no mention in any of their corporate records of being part of an association, nor is it on the deed. It's just a thing that was manufactured after Dr. Gothard chose to try to get back in to say, well, wait a minute. No, this was actually always an association. That's how I get control again. Before that, it wasn't even a thing. He left and there was a statement made that he's no longer part of the ministry. How does the distribution or resolution of a property agreement or property disagreement involve the ecclesiastical abstention? Because they're asking to take the deed to the property and place it into trust to further the teachings of Dr. Gothard. To use not only the real estate and the deed, but also the finances of IVLP to further Bill Gothard's teachings and put him back in charge and control of that. I specifically asked if Dr. Gothard was a party here and I was told no and that I suppose he could be, but he isn't. How at this stage of these proceedings is this distribution of property relevant to the ecclesiastical abstention? I'm sorry if I didn't answer you. I believe it's because they're pleading. Each of their 11 claims was alleging that the real estate and the finances had to be used for this claims association and for the furtherance of Bill Gothard's ministry. They use that term a lot in the pleading that it's to further the teachings of Bill Gothard. What IVLP would say is that we're furthering the teachings of Jesus Christ and should not be directed by a court to further teachings of the prior pastor or leader. Okay. So what we have here, it would be easy to say a failure to communicate because that's their movie, but what I think we have here is a significant factual dispute between your client and the plaintiffs and maybe some additional parties who may be named. How can that issue be decided on a 2-6-15 motion? Well, one, to the second part of your question, Judge Fullerton, remember, absolutely agreed that they could have filed an amended complaint. So if they could have said, we're filing an amended complaint to clean this stuff up, to add the association, to add life purpose, and maybe add Mr. Gothard, and they were given that chance to do that, and they told the court there are no additional plaintiffs. All right. And before you go on, let me say that is still not resolving this. Even if they pled facts and you pled facts or denied facts, we still have a factual disagreement, which is not something that a 2-6-15 is supposed to address or resolve. It can address a lot of things, but it doesn't resolve those things. Well, so I think that's the easiest way to affirm the appeal is because of the parties, and they were given a chance, and they chose to forego that. But I also think that, as I said, their entire claim rests on this association argument, that there has to be an association, and they have pled that the IBLP does not mutually consent, which is a requisite element. So I think, and there's not a single case, there is not a single precedent, and there's no case that they can point to, to say, in this case, that party was saying, I don't agree, I'm not part of your claimed association, but the court said otherwise, or you can't get out of an association, or you are part of an association. There is no analysis in any case, there's no precedent, that someone says, I'm not in an association, and the court says, yes, you are. And so, on a 2-6-15 grounds, with them saying that IBLP specifically says they're not part of this, that that is something that can be decided with prejudice. Well, counsel, if there were cases and precedent, we would not be in a position to have to make these decisions. All of us would be working on another case at this point in time. But the fact remains, there are facts here that we're not taking evidence on, we're not, we haven't done discovery on, we haven't done things about that fly in the face of the purpose of a 2-6-15 motion. All right. Thank you, counsel, for your argument and answering our questions. And I'll now go back to Mr. Spelka, if you have any replies. Your Honor, I just have a few short replies in regard to the order by Judge Fullerton where he dismissed these plaintiffs. And we can bring, under the Union of Technical Engineers v. Lajeunesse, each member of an association can bring a claim on behalf of the broader association in equity. So there is standing, and we brought this to Judge Fullerton's attention, for each member of the association, which is each plaintiff, to bring equitable claims on behalf of the association. Second, by entering into the associational relationship, each of the various entities gains rights, contractual rights and fiduciary duties, to one another. And that's what Hawk v. Ottawa Development Corporation held, that the parties in an association have fiduciary duties to one another. So these were the right plaintiffs to bring these actions in that we had to bring, we were allowed to bring equitable claims on behalf of the IBLP association generally. And then we are entitled to bring contractual claims, breaches of fiduciary duty based on associational principles, implied trust claims, unjust enrichment claims, and promissory estoppel claims, because those claims were held individually by each association member. So by giving us leave to add parties, without telling us who those parties were, or how their claims would be different from those of the existing plaintiffs, that doesn't help us in any way. And the problem was, we had no basis or understanding of what Judge Fullerton's understanding of the law was, as to how we were supposed, what plaintiffs we were supposed to bring in. And given the law that we presented to Judge Fullerton, and the law that existed, the plaintiffs that were in front of Judge Fullerton had authority to bring the claims that we were asserting. So that is why it was not helpful to allow amendment of a complaint with plaintiffs. By dismissing with prejudice as to these plaintiffs, the plaintiffs who exist, Judge Fullerton dismissed the whole complaint with prejudice, or telling us what plaintiff could possibly be, or out there. Second, just generally listening to counsel's argument, all of this is argument, none of it was supported by evidence, and therefore it had to have been denied at this point. The motions to dismiss he presented, there was no, he presents all these arguments, but he doesn't support any of them with an affidavit. There's just no way for the circuit court to have made this determination without an affidavit in a 2619 or a 21005 motion, which would have been probably the better way to go, honestly. So the judge, Judge Fullerton, committed reversible error by granting a motion to dismiss at this point in time with prejudice. Mr. Doddia will, he presented a great many arguments to present to the trier effect, but he didn't provide support or evidence for those facts. And therefore, we have an, we should, we need an opportunity to bring those claims down, or to meet those factual allegations down the road. And therefore, that's the sort of two points I have to rebutting this matter. And finally, no, I think that's all. Thank you, counsel. Justice Shostak, any questions? There certainly are many cases that talk to the court about how to divide church property, are there not? Yes, and Illinois Supreme Court cases, which were cited, certainly Ferraria versus Baskin-Ellis, the cases cited in my brief, Kelly versus Riverside Independent Boulevard. Yes, the courts have the right to divide church property when there's an excuse. Thank you. No further questions. Justice Jorgenson, do you have any questions? I have no questions. Thank you. Okay. I do have one, Mr. Stalka. Admitting as you did today that life purpose was probably a proper plaintiff, why didn't you take the judge up on his offer to file with additional plaintiffs? The way I framed my argument to the judge was that Embassy University was simply misnamed, that Life Purpose Power Teams was an original plaintiff, and I simply misnamed it as Embassy University. I moved in, and Mr. Daudia claims that he didn't know about this, but this was a sub-status, and one of my colleagues had to come in, and we tried to get clarification on that. But since Embassy University was Life Purpose Power Teams, I did not feel it proper to file an amended complaint because Life Purpose Power Teams was Embassy University. It was a simple misnomer, and we pointed that out to the judge. And he didn't clarify his ruling, but the reason why I didn't file the amended complaint was I believe it would have been frivolous to add Life Purpose Power Teams with the same allegations when the judge had dismissed Embassy University, which was a name for Life Purpose Power Teams, and the judge understood. Thank you very much, and thank you, counsel both, for your participation this morning. We will take this matter under advisement, and we will issue a decision in due course. And at this point, we will leave the meeting. Thank you. Thank you, Your Honor. Thank you for your time.